## Southern Railway Company v. Zilpha Pittman et al.

### [52 South. 207.]

Railroads. *Trespasser on track. Negligence. Last clear chance. Question for jury.*

> While a railroad company is not under duty to keep a lookout for trespassers, it should exercise reasonable care to prevent injuring one, discovered and recognized to be in a perilous position and unable to escape therefrom; and whether it exercised such care is ordinarily a question of fact for the determination of a jury.

From the circuit court of Montgomery county.

Hon. George A. McLean, Judge.

Mrs. Pittman and others, appellees, were plaintiffs in the court below; the railway company, appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court. The suit was for the alleged wrongful death of Jesse Pittman, husband of one of the plaintiffs and father of the others. The facts are sufficiently stated in the opinion of the court.

*Catchings & Catchings,* for appellant.

The court should have granted the peremptory instruction asked by the appellant. The case of *Louisville, etc., R. Co. v. Cooper,* 68 Miss. 368, fully justifies this assertion. In that case it was expressly announced that the plaintiff who had been injured by being struck by a train while she was crossing a trestle was guilty of contributory negligence in going on the trestle, and not jumping from it when she saw the approaching train. It appeared from the testimony in that case that she, with two other women, were together, and that she knew it was after the

time for the passing of the passenger train and supposed it had passed; but that she knew it was sometimes late, and that the three, after discussing the risk incident to such procedure, started across the trestle, but when about half way across discovered that the train was approaching the trestle and was dangerously close to them. In that case the trestle at its highest point was about twelve feet high and near the ends not exceeding three feet.

In the case at bar there is no evidence to show that Pittman knew that the train was about an hour behind time, but it certainly was his duty to know it. A man cannot safely venture upon a railway trestle at any time, for it is always more or less dangerous; and he certainly cannot venture upon a trestle with any sort of claim to recompense in case he should be injured while crossing it, without first ascertaining that no train is expected. The deceased ought to have inquired before going upon the trestle whether any train was due to pass along it. If he had made any effort to find out if the train was late, he would have been told that it was about an hour behind schedule time and would probably cross the trestle at any moment. The fact that it is not shown that he knew the train was behind time and so likely to come at any moment cannot avail as an excuse for the going upon the trestle. As stated by this court in the case above cited, he "went upon the trestle either stupidly and careless of danger, or recklessly calculating that he could safely pass over before a train should come." Again, at the point where he was knocked from the trestle, the distance to the ground is shown to have been twelve feet. As stated by the court in the case referred to in the beginning of this brief, "the trestle was not so high as to make it perilous to leap from, and this plaintiff should have done so."

Again, it appears in the case at bar, as in the *Cooper case, supra,* that all reasonable efforts were made by the engineer

to check his engine and avoid the collision. As stated by this court in the *Cooper case, supra,* "there is no just ground to doubt his statement. He was probably mistaken in supposing, as he says he did, that deceased was on the trestle when he first saw him. Nor is it surprising that he should be mistaken as to this for it is often difficult to determine the exact position of one at a distance." The engineer testified that when he first saw Pittman, he could not tell whether he was on the trestle or the track, but inasmuch as his back was toward the train, the engineer blew his whistle as a warning. The train was running rapidly on a heavy down grade and therefore passed over the distance between the curve where the track became straight and the trestle very rapidly. The engineer further testified that as soon as he saw deceased was on the trestle and discovered his danger, he put on the emergency brakes and kept them on until the train stopped, which it did just after passing over the trestle. The witness further testified that he did not know Pittman was an old man seventy-two years of age, and, indeed, knew nothing of his age or condition; that Pittman became too confused to save himself, if that be assumed, does not affect the liability of the appellant. If deceased was in such a state of mental confusion, as the engineer testified was true, it was directly due to his gross negligence in placing himself in such a highly perilous position, and when the unavoidable accident occurred, the appellant was in no way to blame, and consequently cannot be held legally liable for the accident.

*Hill, Knox & Wilburn,* for appellees.

The engineer having run his engine over this trestle for some twenty years, and knowing, as shown by his testimony, that it was approximately twenty feet high, was bound to have known that deceased, when upon it, was in a dangerous posi-

tion.   When the engineer saw deceased upon this trestle, it immediately became his duty to exercise reasonable care to prevent striking Pittman.

The engineer did not do all he could reasonably have done to save the life of deceased, for if he had applied his emergency brake when his engine was at the point of the curve where he said it was when he first recognized that the deceased was upon the trestle, he could, according to his own testimony, have easily stopped the train within one hundred yards, and long before his train ever reached the east end of the trestle; and the life of deceased would have been spared.

It was a question for the jury to determine from the testimony in the case and from all the surrounding circumstances which they saw and observed in and about the place where this accident occurred, as to whether deceased could have by the exercise of reasonable effort extricated himself, and then in turn whether the engineer could, by the exercise of reasonable care after discovering the deceased upon the trestle, have prevented the killing; and what was such reasonable care was a question of fact to be determined from all the circumstances.

The case of *Louisville, etc., R. R. Co. v. Cooper*, 68 Miss. 368, cited by opposing counsel, is not applicable to the case at bar.   In the *Cooper case, supra,* the evidence showed that the plaintiff and those with her debated as to whether or not they could get across the trestle before the train came; and there was an unobstructed view of the track for more than a mile; and that if they had looked for the train, they might have seen it; but in the case at bar, the deceased, Pittman, could not have seen the approaching train on account of the curve some three hundred yards east of the trestle.   In the *Cooper case, supra,* it further appears that the trestle was only about three feet high at the end, and it is apparent that Mrs. Cooper was

at the end of the trestle when she was injured, for the court says: "A step or two more would have saved her." We readily admit that it was the duty of plaintiff in the *Cooper case* to leap from the trestle at a point where it was only three feet high, for such a slight jump could not possibly injure a person in a normal condition; but in the case at bar, the trestle, for the greater part, as shown by the evidence of the engineer, was approximately twenty feet high; and while at the point where deceased fell it was twelve feet high, yet in the opposite direction to that in which deceased was walking, was very much higher. It is most evident that deceased, when the engineer first saw him upon the trestle, was back east upon the trestle where it was much higher than the point from which he fell, for the engineer testifies that when he first saw Pittman upon the trestle, Pittman was running as if trying to make the end of the trestle; from this it is evident that the engineer realized the perilous position of deceased; and the engineer had no right to assume that deceased would jump from the trestle.

The mere fact that deceased was upon the track of appellant, did not authorize the engineer, after seeing him upon the trestle, to make no reasonable effort to prevent striking him. This court in the case of *Christian v. Railroad Co.,* 71 Miss. 237, said: "The true rule is that the servants of the company are not bound to keep a lookout for trespassers, but if they see one and appreciate his danger, and that he cannot by the exercise of reasonable effort extricate himself, then they, in turn, must exercise reasonable care to prevent injury to him, and what is such reasonable care is a question of fact to be determined by the circumstances." And under the facts in the case at bar, and under the opinion in the *Christian case,* the court below properly denied the peremptory instruction asked by appellant, and rightly submitted the case to the jury for their decision.

MAYES, C. J., delivered the opinion of the court.

There can be no disputing the fact that the old negro, seventy-three years of age, was guilty of negligence in venturing on a railroad trestle two hundred and forty-eight feet long and from twelve to twenty feet high. Had accident resulted to him solely because he went upon the trestle, undoubtedly he could not have recovered therefor. But we do not conceive that to be the question in this case. Even trespassers on railroad tracks cannot be recklessly or wantonly injured; but, when seen in a position of danger, reasonable care must be exercised by the railroad to prevent the injury. Without attempting a rehearsal of all the facts in this case, we will review a few points indisputably shown by the testimony, in order that we may determine whether or not it was a question for the jury to determine whether such reasonable care was exercised by the railroad company.

The engineer running the train that killed Jesse Pittman had been on that road for nineteen or twenty years. He knew of this trestle, which was two hundred and forty-eight feet long and from twelve to twenty. feet high. He saw the deceased on this trestle as he turned the curve, some three hundred and fifteen yards away. The train was running at thirty-five or forty miles an hour. To use the exact language of the engineer, he says: "As I rounded the curve (shown by the testimony to be about three hundred and fifteen yards distant) I realized that he was on the trestle. I blew my whistle to let him know I was coming. He had his back to me, and when I blew my whistle he mended his gait. He did not run, but kind of hopped along; kind of trotted. He did not exactly run, and I thought he was trying to make the end of the trestle, and in my judgment I did not think he could make it, and I then applied my emergency brakes." It fully appears in other testimony that the emergency brakes were not applied

until the engine had reached the approach to the trestle, and less than two hundred and forty-eight feet from where deceased was killed; it being impossible to come to a stop in less than three hundred feet. In short, although the engineer first saw deceased three hundred and fifteen yards from where he was killed, on a trestle from twelve to twenty feet high, and running for no purpose, apparently or rationally, but to seek a place of safety, no effort was made to stop the train until it was manifest that the old man could not reach the end and in this way gain a place of safety; it then being too late to stop before striking him.

The question in this case is, In view of all the facts in this record and known to the engineer, did he exercise reasonable care to avert the accident? That the position of the party killed was a perilous one all mankind will agree. That the engineer knew of this position is testified to by him. Then the question is, Did he exercise reasonable care? We think this question should have gone to the jury, and, since their finding is against the idea that reasonable care was exercised, we do not feel warranted in disturbing their finding. The case of *Christian v. Railroad Co.,* 71 Miss. 237, 15 South. 71, is directly in point and controls this case. In cases of this character the court says: "The true rule is that the servants of the company are not bound to keep a lookout for trespassers; but if they see one, and appreciate his danger, and that he cannot, by the exercise of reasonable effort, extricate himself, then they, in turn, must exercise reasonable care to prevent injury to him; and what is such reasonable care is a question of fact, determinable by the circumstances. *Jamison v. Railroad Co.,* 63 Miss. 33; *Railroad Co. v. Cooper,* 68 Miss. 368 [8 South. 747]; *Railroad Co. v. Williams,* 69 Miss. 631 [12 South. 957]; *Railroad Co. v. Watly,* 69 Miss. 145 [13 South. 825]."

*Affirmed.*